Good morning. May it please the court, Glenn Danis for appellant. So I'd like to just focus on a couple of issues here. One being, I'm not sure if it really came out as much as it might have in the briefing regarding the standard of review that under the Robinson v. City of Chachilla case, if the right legal standards are not applied in a case such as this, even though it's under an abusive discretion standard, excuse me, the, I'm sorry, is this a little bit better? Okay. If the right standards are not applied and that's the first step of a two-step process, the court's ruling necessarily falls outside the abusive discretion or the abusive discretion standard. Only at the second point do you get to whether or not the ruling or the actual decision is within the range of the discretion of the trial court. Here we have a situation where the wrong legal standard was applied to two of the main prongs under 1025 successful party analysis. First, under the causation part of that, and second, under the primary relief sought part of the prong. Under causation, the court applied simply the wrong legal test on its face. The district court here applied the but-for rather than the substantial fact or standard to determine whether or not this lawsuit was in fact one of the reasons for the several bits or actually the four pieces of remedial conduct that were put into place by Tutu and Lee. On the primary relief sought, I mean, how do you deal with the fact that it seems that throughout the case, your client was not focused on the labels. The client was focused on the size of the box or the amount of candy in the box, and then the relief that ended up happening was the labels. Sure. So in this case, the very first thing that we did in this case was to send a demand letter, and in the demand letter, the very first thing that was prayed for was to terminate the use of deceptive packaging by either adding more candy or by modifying the existing packaging. If we had meant that the only thing we cared about was the size of the box, we simply would have said it should either be adding more candy or shrinking the box. Well, that's one line from one demand letter, but there's lots of other pieces of this record in which the argument was made by plaintiffs that the labels were actually not effective. The plaintiff hadn't herself seen the labels. The labels wouldn't be seen. It wouldn't change anybody's mind. So I think it then raises the question, well, how did you get the primary relief sought in light of those statements? Sure. Well, I think to answer your question, Your Honor, one would be that most of those comments were in response to or came in opposition to a 12B6 motion, and the argument there was, Tootsie was making, was that the net weight and the serving size, both of these pieces of data that were buried in the boilerplate on the back of the box, served to dispel any kind of deception. The issue there was, I believe, our position was really that that argument, that the net weight and serving size could serve to dispel deception over the amount of candy that was in the box, simply don't go to it. But that's not to say that the piece count, and by the way, I just want to point out that the piece count was changed from a piece count per serving size to a piece count overall, which is a very different data point, was moved to the front. That's not something, in combination with the diagram of the actual size of the piece of candy, in combination with moving forward the slack fill warnings, all of that together, that constellation of information, is not something that we ever said was unimportant. The comments about, you know, unimportant or that's something that people wouldn't look to, were within the content, I believe this was in the supplemental excerpts of record at pages 384 or around there, I mean, this was in the context, and it has to be looked at in the context of a 12B6 motion, and opposition to it, and what the arguments that were being put forward there were. Counsel, it's hard for me to get around your statement in your opposition to the motion to dismiss that the net weight and quantity disclosures is a red herring. And when you've termed it a red herring, it's difficult to say that when they do that, that you get to come in here and say, well, yeah, this is what we were looking for, and this is a good result, and our clients are just thrilled, and we should get money for this. Right, well, again, I think that it's important to take apart what exactly the things that we were saying, I mean, if I understand your Honor's question, you were talking again about the net weight and serving size bits of data? I'll read it to you, here's your sentence. Defendant's net weight and quantity disclosure defense is a red herring, intended to distract from the main issue in this case, the presence of non-functional slack fill. Right, so I believe that there's kind of two parts to that. One would be that the presence of non-functional slack fill is itself a statutory violation for which we are not directly seeking enforcement. Here we are seeking enforcement under the consumer protection standards for deception. The deception, from our perspective, was caused by the fact that people simply didn't know what was in the box. But we still have non-functional slack fill in those boxes, right? That's correct. So our position is that the deception associated with that non-functional slack fill is lessened or goes away entirely when you put into compliance with the current statutes right now, or the current slack fill statute, which is basically to put the information that was never there before about the size of the candy and the number of candy total in the box. I just want to emphasize that prior to this, the only piece count information was the serving size. How does that help? You know, you can do the math on the back. It says, you know, it was either 12 or I think 15 or 16, and they changed it just a little bit per serving. And if you've got three servings or three and a half servings or two and a half servings, whatever it is, you can do the math and come up with how many pieces are in there. If they go to something that says, yeah, guess what? You're going to get about 35 pieces of Junior Mints in this box. How does that help a consumer? Well, Your Honor, I mean, respectfully, I think there is a pretty substantial difference between them. I think there's a substantial difference between putting a serving size on the back buried in very small point font on the back of a box and saying directly on the front, here's the size of the thing you're getting and here's how many are in the box. Then, you know, the size of the box, it could be this big and you'd get 35 Junior Mints and you'd have a lot of slack fill. That's true. And I think that, you know, in order for this statute to afford us fees, we don't have to have shown that we cured every possibly deceptive marketing technique. But you didn't seem to have cured anything that you were complaining about. That's the problem I've got. Well, I think that, you know, the proper analysis here would have been for the district court to have said, what did the box look like before the suit was filed? What did the box look like after the suit was filed? And then what did Tootsie Roll say their reasoning was for? Your complaint was the slack fill. Isn't the district court entitled to say, before the suit, you have this much slack fill, and after the suit, you still have this much slack fill, so you weren't successful? Well, if we were looking to enforce the slack fill statute directly, I think that that would be a fair statement. Here, what we're looking to do is enforce the false advertising law, and the false advertising law goes to whether or not a reasonable consumer would be, in fact, deceived by the packaging. What does the case law say about it? What level of generality to define the primary relief sought? Because I think it's fair to say on this record that the remedial measures they took are not the specific measures that you were seeking throughout the litigation. So if we define primary relief very narrowly, you lose. But if it's defined more broadly, your argument becomes more colorful. What does the case law tell us about at what level of generality to define primary relief? Sure. Thank you, Your Honor. I think that that's a great question. With respect to, there aren't a ton of cases about this. I would say that the Marine case, which is one that they cited, and one of the California State Court of Appeal case, says that where a nonprofit was seeking to prevent a commission from having an artificial barrier removed from the water, and what they were successful in instead was challenging and having the legislature revisit the way that the commission was constituted, but they were not successful in getting their barrier to stay where it was supposed to be. That was a case where they said you didn't get what you asked for. What you wanted was to have the barrier relief kept there. You were unable to do that. You were able to get something completely tertiary, which was a revisiting of the way that this commission was composed. That is not within your primary purpose or the primary relief sought. Contrast that with the Edwards case from this court, which is one of the two, albeit non-published cases, that talk about catalyst fees that we talked about. There, the issue was lack of safety associated with bucking of a car due to a certain kind of mechanical problem, and there what the plaintiffs were seeking was simply a recall that would deal with the mechanical problem. If the district court there had sought to narrow it so much to specific paragraphs of the complaint, it's possible that they could have said, no, you didn't get specifically what you wanted. You wanted the recall program to be on this specific date, to go to this specific amount, this specific amount of cars in these models. And I believe there they got a recall that was not 100% coextensive with what their complaint was asking for, but they got a recall that dealt primarily with safety issues. And that was the issue. And there the court, albeit on an affirmance of an award of fees, did say you got what you asked for. You wanted the recall of cars. You got the recall of cars. Okay. But I guess the difficulty here is that it was the strategy of your case, your client's case, to disclaim the ability of the warnings and the disclosures to matter, because there were some warnings on the back of the box already. Your client viewed those as inadequate or not ones that people would see, and it's not just straight statements in the demand letter or the complaint. I mean, it's a whole course of litigation in the class third opposition and expert reports and otherwise in which you actually disclaimed the adequacy of disclosures. So it then becomes a little more difficult to come in and say, well, I think we should be able to get the benefit of remedial changes that are in the nature of disclosures. Sure.  I think that here, if you look at the entire record, it actually does quite a bit support what we're saying about what we were after. Number one would be the demand letter. I've already talked about that there. We very specifically said we are looking to modify the existing packaging. We're looking at the plaintiff's deposition where she clearly said, I'm not after money, I'm after injunctive relief. We're looking at our expert, that at ER 508 to 513, used survey analysis to study information printed on the box, not about the size of the box, but the expert was actually looking at the information that was provided on the outside of the box at 508 to 513. We saw 23B2 certification only, only injunctive relief. Our complaint on page 583 of the excerpts of record, paragraph 132, asks for a prayer to end defendant's false and misleading packaging, that the packaging be enjoined. It didn't say the size of the box. It didn't say to fill it with more candy. It said quite specifically in paragraph 132 to end the misleading packaging. And finally, under the UCL and under binding case law under Tobacco II, the California Supreme Court has said that the primary form of relief available is injunctive, and this is just to say that what we're after was injunctive rather than monetary relief. That was sort of one of the issues that one might read into the district court's ruling. The notion that there was not or that we were not looking for injunctive relief in the form of a constellation of disclosures in the labeling that would dispel consumer deception and violation of the consumer protection statutes is simply to read this far too narrowly, this requirement. There's less than two minutes left. Do you want to save time for rebuttal? Yes, Your Honor. May it please the Court. David Jolly on behalf of Tootsie Roll Industries. I believe that Your Honors have hit on the main issue that I wanted to talk about. The plaintiff appellant has complained about the succinct two-paragraph, essentially, denial of their motion for catalyst fees. But there is a very simple threshold question that if you come up with a proper answer, it eliminates this causation problem altogether, and that is, have you received the primary relief you're seeking? Plaintiffs have argued now that they were not trying to limit. I have the same question for you. At what level of generality do we define that, and what do the cases tell us about that? A grant from the California Supreme Court is pretty clear on this, and it says, at the very least, this is at 34553 at 565, at the very least a plaintiff must establish the precise factual slash legal condition that it sought to change or affect as a prerequisite for establishing the catalytic effect of its lawsuit. This was applied recently by Judge Gonzalez Rogers in the Northern District, and this was a case, Stitt v. Citibank. In that case, plaintiffs were complaining, trying to put a class action, complaining about property inspections on foreclosed houses. They complained that Citibank was marking up these third-party property inspections and making a profit off it, and it was a fraud, a consumer fraud. Citibank voluntarily changed its practice not to change the amount that was charged, but to limit the fees to once a month. Plaintiffs then lost on class certification but declared victory by making the Citibank change its practices. They were complaining about these fees. They changed the fees in terms of the number of fees charged, and therefore they won. Judge Rogers, Gonzalez said no. Gonzalez Rogers said no. You were complaining about the surcharges, not about the number of fees. In fact, earlier on you explicitly said it doesn't matter whether they charge one or a hundred a month. It's the surcharge that is the problem, and therefore you have not changed what you sought to change. Did you change your behavior in a way that moots their claim and eliminates the deception of which they've complained? How is that not the accomplishment of the primary objective of the lawsuit? Yes, if we had shrunk the box, we would have mooted their claim. They did not limit their denial of labeling effectiveness to what would he say? He said to serving sizes and weight counts. If you go through their complaint and their opposition papers to the court, they were very, very clear. In fact, one of the specific changes we made was to put the words actual size near a scale drawing. In their papers, they said scale drawings are irrelevant and cannot fix the problem. They're now trying to say that those scale drawings are in fact what they were seeking all along, but that's not what they were saying. They never said labeling can change anything until after we had changed the label and they had decided that this was the point in time where they're going to try and get fees. It just simply wasn't what they were after. But do you disagree that your actions have eliminated the deception of which they complained? Well, we disagree that there was any deception in the first place. We said there's no need for corrective action. There is no non-functional slack fill. This is not the issue before the court. You need to have the space for certain packaging reasons and for protection of the product. I'm not here to get into that. The issue about whether or not primary relief was achieved is a factual question based on the record for the trial court. And absent clear error, if there is any reason to support her decision, we're not here to then go and second-guess the factual finding here. The factual finding, as you said, was clear, is that plaintiffs were not seeking labeling changes as part of the modification in which they complained. If you go through the list of things that they had told the court, it is extremely clear. Plaintiffs argued that, and I'm quoting, clear disclosures on labels, scale drawings, and other informative matter may not counteract the impression created by the size of the package. And in this sense, slack fill can be viewed as inherently deceptive and as implicitly imparting inaccurate information. That's at supplemental excerpts of records 342. They said this over and over again. Their mantra was shrink the box or fill the box, shrink the box or fill the box. When my client changed the labeling, they were under the impression this would have no impact on this lawsuit whatsoever because they were not shrinking the box or filling the box. It was only after we had made the changes, months after we made the changes, that for the very first time they said shrink the box, fill the box, or change the packaging a little bit in terms of labeling. That was what they put in their classification papers, but that was a different change of the repetitive mantra they had had throughout the entire case. It was very clear labeling is unimportant. Customers don't read the package. The only thing they think about is either the size of the box and the price, and sometimes not even the price. They simply don't read the labels. That's what they said in their briefing over and over again, and the judge found that very clear. What's your best case that tells me at what level to define the specific relief sought? Because, you know, again, it says the precise factual legal condition. Well, if I look at the sort of legal claim at that level of a primary right, they accomplished it. If it's supposed to be what exactly did they want changed, they didn't accomplish it. But how do I know from the case law which of the two is right? I understand. And as they said, there's not a ton of decisions on this issue, typically because it's left to the trial court to decide whether or not the condition has been met. But I can put forward a state where the issue of, you know, these property inspection fees was the subject of the case. There was a change that, in fact, would make customers pay less in fees because they were limiting the amount, but the judge still said you were talking about a surcharge on these fees, not about the number of fees themselves. I mean, that seems pretty clear here. They were talking about a modification, but the judge was very clear. Labeling was not the type of modification you were seeking. I mean, you can't tell the judge over and over again this is about shrinking the box or filling the box and then later say they did neither of those, but we won. But do you have a case where the changes mooted the case but were not the precise relief that was sought? Because you see the problem that that creates. It means that a defendant can evade the fees just by saying, well, I'll do this, which isn't exactly what they asked for, even though it kills their case, and now I'm immune from fees and I've gotten out of this. I'm not certain that the presumption there that it's mooted the case is correct because if we had made those changes at the beginning of the case, they would have continued litigating saying you hadn't shrunk the box or filled the box. Their original claims were not moot. In fact, they said you could put a giant label on the front and say whatever you want to. Labeling disclosures don't matter. They don't change the size of the box, which is what customers look at. So they declared their case moot, but that was only after they changed their tactics. As the judge said, reading the chronology here, it seems fairly evident what happened was when you made the labeling changes, they continued litigating because you hadn't fixed what they were complaining about. Then as they were moving for class certification, they decided to cut their losses and attempt to claim victory as a strategy. It wasn't that their case had been mooted. It was just if they said it was mooted, they can attempt to claim catalyst fees. The judge didn't buy it. The judge said if you had wanted labeling changes, you wouldn't have continued to tell me over and over again that labeling changes don't matter. How is my client supposed to know, in fact, what they wanted? If they keep saying we don't care about labeling changes, part of the catalyst fee, you're supposed to have a settlement discussion beforehand to see if you can resolve the issue beforehand. When you're told over and over again, labeling doesn't matter, that's not fairly trying to settle a labeling problem. That's trying to settle a slack fill problem, the total volume of empty space in a box. We did not change the empty space in the box. There was no fix of what they complained about.  That claim could still be out there. Now, their class was not certified and they withdrew it, so there is no active case going on in that sense. There's no remedy left because they've abandoned it. They have now said that their claim is moot, but it seems like a convenient after the litigation statement when in the beginning they were saying labeling cannot change this problem. You cannot fix it through labeling. Labeling is a red herring. I mean, if you just look at the plaintiff has alleged in the original complaint that she would not have understood or expected any disclosures in the boxes to alter her expectation of a quantity of candy commensurate with the size of the box. Plaintiff proposed a remedy in the complaint to increase the quantity of candy or decrease the size of the containers. That was the remedy sought. Plaintiff discounted labeling as a remedy and their amended complaints saying the same things. I went even further. Counsel, what are you reading from? What's that? What are you reading from? I'm reading quotes of complaints from their original complaint and from their amended complaint. These are Gordon's statements. Gordon's statements in the complaint and in the amended complaint. But the massive one is in their opposition to our motion to dismiss where they said clear disclosures, scale drawings, and informative matter on the labels may not counteract the impression created by the size of the package. In this sense, slack fill can be viewed as inherently deceptive, no matter what you put on your labels. That's a supplemental excerpt of record 342. Their position was clearly stated that, quote, reasonable consumers equate a larger package with more product and better value regardless of labeling disclosures. That's a supplemental excerpt of record 343. And also you can see 339 to 43. There's simply no question, and the judge found it clear that was her finding, which could be disturbed only on a clear error or if there was no reasonable basis for her to find this, that she did not buy the fact they were, in fact, seeking labeling disclosures from the outset and that instead they changed their litigation tactics in order to try and claim victory after we changed our labels. And it was well after we changed our labels. We disclosed our label changes in November. They took a deposition on it in January. Then for the first time in late February, they said, well, you made these labeling changes. How about we settle based on those labeling changes and you pay us about a million dollars? We said we don't want to pay you any money. We didn't need to correct anything. This was just a labeling change which you weren't seeking. And then for the first time in their motion for classification, they've changed their mantra from shrink the box or fill the box to shrink the box, fill the box, or eliminate deception in some sort of labeling way. That was a change, a very substantial change in their position which came about after we changed our labels. I don't know if you want to get into causation, but they've complained about not applying the presumption of causation, but that stems from the fact that the Ford Court, the one that they based a lot of their motion on, said very clearly that you don't get a causation until you've shown that you received the relief you were seeking all along, that the causation doesn't come forward if you haven't gotten the relief you were looking for. Here the judge said you clearly didn't get the relief you were looking for, so there's no reason to go into this causation test. I mean, she didn't set out her work in pages and pages, but once you find that there's a clear finding that there's no successful party here, you don't go into these causation tests. That's the first line that you need to cross before you can get to causation. Here they didn't cross that line. The judge didn't think it was even a close decision. And I think if you look at the 9, 10 dozen different times they've told the court they weren't seeking labeling changes, that it's pretty clear why the judge would be surprised that they now claim that they were seeking labeling all along. That's my argument on primary relief. I have some questions about what they're trying to do in terms of getting back to the court. I don't see any relief available. They have discounted... They now claim the case is moot based on injunctive relief. There is none left to get. Their expert has said that. They've missed on their class certification. They have had a plaintiff who said that she's not interested in damages. There's no attorney's fees left. I see no case of controversy. I'm uncertain as to what we will be litigating about if we went back to reverse the judgment she entered. And then as to costs, they told the judge that proper costs would be $5,700 essentially. We asked for $10,000. They said proper costs would only be about $5,700. She gave them $5,100. Now they're saying $5,100 is improper as well. They never argued against costs at the trial court level, it seems improper for them to be arguing about it now. Unless there are any further questions, my argument is done. Thank you, Counsel. Thank you. Just a couple points in rebuttal here. One would be that we did not disclaim disclosures in general, but the disclosures as they existed at the time of the opposition to the motion to dismiss. Our demand letter, when one reads it, would clearly have been mooted if they had provided the same relief that they ultimately provided at that point. Instead, they didn't respond to the demand letter or take advantage of the safe harbor that the CLRA provides in order for those kinds of discussions to actually take place where different forms of relief could be offered to actually moot a case. Show me in the demand letter where you suggested that what they did would moot your case. Well, the very first thing we said was that by changing the packaging to eliminate deception, that was what our case sought. By increasing the amount of candy or reduce the size of the container. I'm quoting from your letter. What? Number one, demand. Terminate the use of misleading and deceptive packaging, either by adding more candy or modifying the existing packaging. That's number one. Correct. This is modifying the existing packaging. By adding, you know, several very important disclosures. That's not what you said up above, counsel, two paragraphs above that. You said increase the amount of candy or reduce the size of the container. That's not what you got here. Correct. I believe, Your Honor, that that goes to the first. I understand where it is. But you were very specific in saying there were two things we want, two things that will satisfy. And one of them wasn't disclosing the total number of pieces of candy in the box. Sure. I mean, I don't think that plaintiffs in most cases can. I'm not sure why you stopped this suit, counsel. I mean, it looks to me under the Slackville laws, you might have had a pretty good claim. I don't know why you gave up here. Well, we weren't seeking to enforce the Slackville laws that don't have a private right of action. What we were seeking to do was to enforce the consumer protection laws that prevent. Sure. But I think you had a pretty good argument by using the Slackville laws as your hook to say this is deceptive. I don't know why you gave up here. I think we had a very good hook as well. And we ended up getting four different types of relief that I think do, in fact, dispel deception. What Your Honor is referring to, two paragraphs ahead of the two, sub I and sub 2I, I think goes to sub I, where we said by adding more candy, and we were saying that you could either add more candy or fill the box for sub I. Sub 2I is modifying the existing packaging. And again, this is a hypothetical about what might have happened had they responded to us and said, you know what, your problem is deceptive packaging. Why don't we add an actual size text and a picture of the candy, and why don't we change the way that we count them, and why don't we change the way that we count them, and put that right on the front of the box so no one could say I didn't know that there were exactly 35 pieces of candy and it's this size in the box. Thank you, Counselor. Thank you very much. Thank you. The case is argued to be submitted.
judges: Bybee, Collins, Bress